WATERMAN, Justice
(dissenting).
I respectfully dissent. I agree with the dissenting judge on the court of appeals that summary judgment was correctly granted by the district court. Negligence cases in general and bar fights in particular are poor candidates for summary judgment. But, here, it is undisputed the bar owner kicked out the troublemaker. There was no reason to eject the well-behaved victim of the troublemaker’s verbal abuse or call the police before the quiet patron unexpectedly jumped the troublemaker in the parking lot. The evidence is insufficient to raise a jury question on negligence or scope of liability. Uncontro-verted facts establish the defendant acted reasonably as a matter of law.
There is no evidence or claim that prior fights or third-party criminal acts showed a need for a bouncer or other security at Gutterz. Bars are not insurers strictly liable for injuries on their premises inflicted by others. So, what happened that allows Hoyt to sue Gutterz for a beating inflicted on him by Knapp in the parking lot? Although accounts of the fight outside differ, what happened inside Gutterz is undisputed.
By all accounts, Hoyt was the aggressor inside Gutterz, while Knapp remained calm. The two people working at Gutterz Bowl & Lounge in Guthrie Center, owner Rod Atkinson and waitress Sarah Greene, knew nothing about any bad blood be *783 tween these men. Hoyt had been fishing with defendant Knapp hundreds of times, but they had recently had a falling out. Hoyt and other members of his construction crew stopped by Gutterz after work. After drinking a few beers, Hoyt and his companion, Chris Brittain, became loud and started taunting Knapp. Hoyt approached Knapp to confront him and continue his verbal harassment. It is undisputed that Knapp did not threaten Hoyt verbally or physically. Greene responded to the belligerence of Brittain and Hoyt by threatening to “cut them off’ unless they quieted. “When their taunts and name-calling continued despite her warning, she talked to Atkinson who agreed they should quit serving them beer. Atkinson, who had been busy in the kitchen, came out to check on the situation. Hoyt complained about the decision to quit serving them alcohol. "When Hoyt and Brittain continued their name-calling, Atkinson told them to leave. They left. Throughout this commotion, Knapp stayed quiet. He did nothing to raise a concern about his behavior or to justify kicking him out with Hoyt.
Having kicked out the troublemakers— Hoyt and his companion — what else should Gutterz have done? How was the bar negligent? The majority concludes a jury could find Gutterz negligent for failing to call the police. But, no crime had (yet) been committed, and Hoyt exited the bar when told to leave. Knapp was not threatening anyone or misbehaving in any way. At that point, why call the police? From Gutterz’s standpoint, the incident had been defused by Hoyt’s departure. The majority also argues Atkinson should have done more to ensure Hoyt left the parking lot safely. This theory assumes Atkinson reasonably should have foreseen Knapp would attack Hoyt. Knapp had not so much as even raised his voice. The majority fails to cite a single case from any jurisdiction supporting a property owner’s liability for a third-party assault under equivalent facts.
This case is quite a bit different from the Iowa precedent holding a jury question existed on a bar’s negligent failure to prevent an assault. See, e.g., Regan v. Denbar, Inc., 514 N.W.2d 751 (Iowa Ct.App.1994). In that case, plaintiff, Daniel Re-gan, was playing darts with his brothers at Katie McButts Tavern in Davenport. Id. at 752. Two men confronted the Regans, and one “struck Daniel in the face, knocking him to the ground” inside the bar. Id. A fight ensued, and the bartender intervened and asked the Regans to leave. Id. The Regans feared they would be attacked on their way to their vehicle and asked the bartender to call the police while they waited inside until the police arrived. Id. The bartender refused and sent the Re-gans out the back door where he saw one of the attackers waiting. Id. at 753. The next attack on the Regans outside was reasonably foreseeable. Accordingly, the court of appeals reversed a directed verdict for the bar. Id. In sharp contrast here, no one asked for the police to be called, and Knapp had not assaulted Hoyt or anyone inside the lounge or given any indication he would do so outside.
Our court’s recent adoption of sections of the Restatement (Third) of Torts is not the death knell for summary judgments in negligence cases. See, e.g., McCormick v. Nikkel & Assocs., Inc., 819 N.W.2d 368, 371-75 (Iowa 2012). In that case, we affirmed summary judgment dismissing the plaintiffs negligence claims against an electrical subcontractor. Id. at 369. McCormick was electrocuted on a jobsite six days after the defendant completed its work and returned control of the locked equipment to the owner. Id. at 370. We affirmed summary judgment on two grounds. First, we applied the long-standing rule that liability follows control, which *784 we recognized as “an articulated countervailing principle or policy” exception to the general duty of care under section 7(a) of the Restatement (Third). Id. at 374. Second, we noted the absence of evidence of any defect in the electrical work and affirmed summary judgment on the alternative ground that defendant “did not create a ‘risk of physical harm’ giving rise to a general duty under section 7(a) of the Third Restatement.” Id. at 375. Nothing in today’s majority opinion limits our holdings in McCormick.
The duty of care invoked by the majority today is found in section 40(b)(3) of the Restatement (Third). The majority relies on comment j, which recognizes that businesses open to the public “owe a duty of reasonable care to persons lawfully on their land who become ill or endangered by risks created by third parties.” Restatement (Third) of Torts: Liab. for Physical <& Emotional Harm § 40 cmt. j, at 43^44 (2012). The duty owed is one of reasonable care. To raise a jury question, there must be sufficient evidence that a jury could find defendant’s conduct breached this duty, that is, the defendant acted negligently or unreasonably. Such evidence is lacking here. The drafters of the Restatement (Third) confirm that, when “reasonable minds can reach only one conclusion,” the court may enter a directed verdict or judgment as a matter of law that defendant is “free of negligence.” Id. § 8 cmt. b, at 103-04 (2010).
The drafters also admonished that “the prospect of criminal conduct is significantly lower than the prospect of negligent conduct.” Id. § 19 cmt. f at 220. Our own precedent applying the Restatement (Third) makes clear the question is whether Gutterz should have foreseen that Knapp would assault Hoyt. In Brokaw v. Winfield-Mt. Union Community School District, a student, McSorley, assaulted Brokaw, an opposing player during a basketball game. 788 N.W.2d 386, 388 (Iowa 2010). Brokow and his parents sued McSorley for battery and his school district for negligent failure to prevent his attack. Brokaw, 788 N.W.2d at 388. We clarified that liability under the Restatement (Third) turned on whether the district knew, or “in the exercise of ordinary care should have known, that McSorley was likely to commit a battery against an opposing player.” Id. at 393-94. We upheld the district court’s bench trial judgment in favor of the district because substantial evidence supported the court’s finding the assault was not foreseeable. Id. at 394-95. In so holding, we concluded the correct legal standard required a determination of whether it was foreseeable McSorley would assault Brokow. Id. at 393-94. Similarly, here, the issue is not whether a fight between Hoyt and Knapp was foreseeable, but rather whether it was reasonably foreseeable to Gutterz that Knapp would assault Hoyt. Gutterz acted reasonably as a matter of law by ejecting Hoyt, the troublemaker. Gutterz had no reason to foresee that Knapp, the quiet one, would attack Hoyt outside the lounge.
I agree with the dissenting judge on the court of appeals, who concluded the “evidence does not make it foreseeable Knapp, who was causing no trouble, would harm Hoyt.” Similarly, the district court correctly concluded:
The circumstances may have made it foreseeable that Hoyt might harm Knapp. The circumstances known to Atkinson did not make it foreseeable that Knapp might harm Hoyt.
In the case at bar there was no evidence of a potential danger to Hoyt from Knapp. Because of that total lack of evidence, a fact question of whether Gut-terz exercised reasonable care to discover the existence of a danger is not gen *785 erated. Just as in Knebel v. Ka-Boos Bar & Grill, [680 N.W.2d 379 (Iowa App.2004)], in the instant case “the owners did not know and had no reason to know that the assault was about to occur.” Accordingly, summary judgment is appropriate.
Under analogous circumstances, other appellate courts have affirmed directed verdicts or summary judgments when the assault that occurred was not reasonably foreseeable. See, e.g., Boone v. Martinez, 567 N.W.2d 508, 511 (Minn.1997) (affirming directed verdict because “the evidence established that the assault by Martinez was sudden and unforeseeable”); Rader v. Sugarland Enters., Inc., 149 P.3d 702, 707 (Wyo.2006) (affirming summary judgment when assailant in parking lot fight was passive bystander in precipitating incident inside before troublemakers were told to leave). See generally Joan Teshima, Annotation, Tavemkeeper’s Liability to Patron for Third Person’s Assault, 43 A.L.R.4th 281, 354-63 (1986) (collecting bar fight cases adjudicated by court as a matter of law).
Summary judgment is also appropriate in this case on the scope of liability. “Under the Restatement (Third) analysis, ... something [defendant] did or did not do must have increased the risk” to plaintiff. Royal Indent. Co. v. Factory Mut. Ins. Co., 786 N.W.2d 839, 851, 851-52 (Iowa 2010) (vacating plaintiff’s jury verdict on grounds the harm was outside the scope of liability as a matter of law). Again, there is no evidence that Gutterz did or failed to do anything that increased the risk Knapp would harm Hoyt. To the contrary, Gutterz reduced the risk those men would come to blows by ejecting Hoyt, who was harassing Knapp.
In Brokaiv, we admonished that:
Where liability is premised on the negligent or intentional acts of a third party ..., “the law itself must take care to avoid requiring excessive precautions of actors relating to harms that are immediately due to the improper conduct of third parties, even when that improper conduct can be regarded as somewhat foreseeable.”
788 N.W.2d at 392 (quoting Restatement (Third) of Torts § 19 cmts. g, h, at 220-21). The majority disregards that admonishment today. It is an “excessive precaution” to require Atkinson to call the police after he ejected Hoyt or to guard Hoyt outside until he left unharmed when there were only two employees working at Gut-terz that afternoon, and Knapp had given no sign of trouble.
For these reasons, I would affirm the district court’s summary judgment in favor of Gutterz.
CADY, C.J., and MANSFIELD, J., join this dissent.