# IN THE COURT OF APPEALS OF IOWA

No. 19-0518
Filed April 29, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL SANDBLOM,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

Michael Sandblom appeals his conviction of possession of a controlled substance. **AFFIRMED**

Britt Gagne of Gagne Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

Michael Sandblom appeals his conviction of possession of a controlled substance. He challenges the sufficiency of the evidence supporting the crime and argues improper testimony was admitted at trial.

**I.      Background Facts and Proceedings**

In the early morning hours of January 7, 2018, Deputy John May of the Polk County Sheriff's Office initiated a traffic stop of a vehicle driven by Sandblom in a motel parking area. A male, ultimately identified as Gregory Enge, was sitting in the passenger seat, and two females were sitting in the back seat. A basket containing clothes and a pillow were situated behind the driver's seat. May asked for everyone's identifications. Enge responded he did not have one, and he provided a false name and date of birth. May returned to his cruiser to run information checks. While he was doing so, Enge exited the subject vehicle and ultimately told May he wanted to go into the motel. May directed him to stay with the vehicle, and Enge complied. May returned to his cruiser and continued his information check, but he was unable to verify Enge's identity.

Deputy Jacob Murillo arrived to assist. Upon May's direction, Murillo removed Sandblom from the vehicle and questioned him about, among other things, the identity of the other occupants of the vehicle. Sandblom advised the group planned to get a hotel room, stated he knew the other occupants of the vehicle through mutual friends, and advised he only knew Enge as "Money."

Sergeant Tony Ferlitsch likewise arrived to assist. May provided Ferlitsch with a situation report, after which May re-approached the subject vehicle to inquire Enge about his identity. At this point, May smelled an odor of marijuana coming

from the vehicle. May had Enge and the other two remaining passengers exit the vehicle. Sandblom and Enge stood with May near his cruiser while the female passengers were interviewed by another officer at a separate cruiser.

Ferlitsch approached the vehicle and observed a baggie in plain view in the front console under the dashboard, where there was "an open space for storage," an area that Sandblom as the driver "would be able to gain access or control" over it. Ferlitsch picked up the baggie and observed it to contain a powdery substance, which was later determined to be 4.37 grams of heroin. Sandblom and Enge were detained. A search of the vehicle was conducted. A handgun was found in the glove compartment in front of where Enge had sat. Two bags of ecstasy and one bag of marijuana were found hidden under the pillow in the clothes basket behind the driver's seat. May searched further into the basket and found drug paraphernalia—syringes and spoons—in a box at the bottom. May testified he learned the clothes basket belonged to Sandblom. May also testified the type of paraphernalia found was consistent with heroin usage. Sandblom and Enge refused to answer questions about what was in the car. The female passengers reported to officers that the drugs that were found in the clothes basket were handed back from Enge to be hidden while Enge hid the firearm in the glove compartment. Trial testimony from Murillo and May disclosed that while Sandblom and Enge were in the back of the patrol car together, Sandblom stated there was "a little bit" in the car.

Detective Nick Petersen of the Mid-Iowa Narcotics Enforcement Task Force responded to the scene after being contacted by Ferlitsch. After being briefed on the situation, Petersen questioned Sandblom about the paraphernalia and heroin.

Petersen advised Sandblom he believed the heroin to be his. Sandblom did not respond verbally, but nodded his head up and down, indicating to Petersen that he agreed.

Sandblom was charged by trial information with possession of heroin with intent to deliver. An amended trial information additionally charged Sandblom with failure to affix a drug-tax stamp. The matter proceeded to a jury trial. Following the State's case-in-chief, Sandblom moved for judgment of acquittal, contending the State failed to meet its burden to show Sandblom possessed the heroin. The court denied the motion. Sandblom preliminarily renewed his motion pending the presentation of the evidence for the defense. The court noted it would alert the parties if its ruling had changed based on the defense's evidence.

The evidence for the defense was limited to Sandblom's testimony. Sandblom testified that, on the date in question, he was an active heroin user, his mode of use was by injection, and the paraphernalia found in the vehicle was his. He testified the heroin was not his, but he intended to receive some from Enge in return for giving him a ride. As to his statement there was "a little bit" in the car, Sandblom explained he was referring to the paraphernalia. As to his affirmative nod to Detective Petersen when accused of being the possessor of the heroin, Sandblom explained he "was acknowledging that [he] was listening to" Petersen.

The court did not change its ruling on the motion for judgment of acquittal in light of Sandblom's testimony. The jury found Sandblom guilty of the lesser-included offense of possession of heroin on count one and not guilty on count two. Sandblom appealed following the imposition of sentence.

**II.    Analysis**

    **A.    Admissibility of Evidence**

We first consider Sandblom's challenge to the admissibility of evidence. He claims certain evidence—testimony by officers concerning Sandblom's statements in the back of a police cruiser that were recorded—was improperly admitted because it was not included in the minutes of evidence. The overarching complaint is that he did not "have advance notice of the testimony prior to it being offered."

It is true that the minutes of evidence must identify expected witnesses and a full and fair statement of their expected testimony. Iowa R. Crim. P. 2.5(3). The State is not required to use precision; it is only required "to adequately alert the defendant to the source and nature of the testimony, and place defendant on notice of need for further investigation of the particular details of . . . expected testimony." *State v. Wells*, 522 N.W.2d 304, 307 (Iowa Ct. App. 1994).

Here, the minutes specifically provided each of the testifying officers would "testify to all facts and information disclosed to the defendant through any preliminary hearing, discovery, or depositions in this case." Sandblom filed a pretrial discovery motion specifically requesting any video or audio evidence from officers' body cameras or in-car cameras. The State disclosed May's in-car video, which is where the complained-of testimony concerning Sandblom's statements originated. And the record—namely defense counsel's cross-examination of Murillo and May—makes clear counsel reviewed the video and had specific knowledge of Sandblom's statement. Counsel's request for and receipt of the video and audio evidence put the defense on notice and made it fair game. *See id.* (noting "[t]he purpose of the rule is to eliminate claims of foul play and provide

an accused meaningful information from which a defense may be prepared" and the State "is not bound to the original minutes"). As such, we find no abuse of discretion in the court's overruling of Sandblom's objection to the testimony as outside the minutes of evidence. *See State v. Hayes*, 532 N.W.2d 472, 477 (Iowa Ct. App. 1995) (setting forth standard of review).

B.     Sufficiency of the Evidence

We turn to Sandblom's challenge to the sufficiency of the evidence supporting the possession element of the crime. Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law. *State v. Albright*, 925 N.W.2d 144, 152 (Iowa 2019). The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of

witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

The State bears the burden of proving every element of a charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). Sandblom does not challenge the jury instructions employed at trial. As such, the instructions serve as the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018). Generally, the jury was instructed the State must prove Sandblom possessed the heroin and that possession could be actual or constructive. *See State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) ("Possession may be actual or constructive." (footnote omitted)). The jury was further instructed "[a] person who has direct physical control over a thing on his person is in actual possession of it." *Accord State v. Vance*, 790 N.W.2d 775, 784 (Iowa 2010) (noting a person has actual possession of an item when the item is found on the person). Constructive possession was defined to mean when someone has the power to exercise dominion or control over a thing. *See Reed*, 875 N.W.2d at 705, 708. Constructive possession of drugs may be proven by inferences. *Id.* at 705. "Constructive possession may be inferred when the drugs . . . are found on property in the defendant's exclusive possession." *Id.* However, where, as here, a vehicle is "jointly occupied, additional proof is needed." *Id.* The supreme court has identified a list of nonexclusive factors to consider in determining whether a defendant constructively possessed items discovered in jointly occupied areas:

(1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Id.* at 706 (quoting *State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013)). "The last factor is a 'catchall' that captures other relevant circumstantial or direct evidence." *Id.*

As to the first factor, Sandblom made a statement in the back of the patrol car indicating he had contraband in the car. He also nodded his head in a yes fashion when Petersen alleged the drugs were his. While Sandblom attempted to explain away these facts by asserting in his trial testimony that the former concerned the paraphernalia and the latter a mere acknowledgment that he was listening to Petersen, the jury's conclusion that the heroin was Sandblom's was necessarily based on the circumstantial evidence and the jury's credibility determinations, which we do not disturb in a sufficiency-of-the-evidence review. *See Musser*, 721 N.W.2d at 761. While there was no fingerprint evidence, there was an abundance of circumstantial evidence linking Sandblom to the controlled substance. Sandblom takes the position that Enge was a drug dealer and he hid the heroin in the vehicle upon contact with law enforcement. While Sandblom appears to dispute the point on appeal, the evidence was undisputed that the heroin was found in plain view and easily within his reach on the console. So, Enge certainly did not "hide" it. He did hide the contraband law enforcement concluded was attributable to him. As May testified, "you don't pass back one set of drugs and hide another in plain view to be found." That would defy logic.

Sandblom also argues that no rational jury could have concluded the heroin was his while also concluding he had no intention of distributing it. We disagree. Sandblom conceded he had been a heroin addict for roughly ten years and had developed a high tolerance for the substance. Specifically, Petersen testified an average user would use one-tenth of a gram of the substance at a time. Sandblom testified he used one-half to six-tenths of a gram when he uses. The jury could have rationally concluded such a large amount of heroin was intended for personal use given Sandblom's high rate of consumption.

Viewing the evidence in the light most favorable to the State, we conclude the evidence was sufficient to allow a rational jury to conclude Sandblom was guilty beyond a reasonable doubt.

**III.   Conclusion**

Finding no abuse of discretion in the complained-of evidentiary ruling and concluding Sandblom's conviction is supported by substantial evidence, we affirm.

**AFFIRMED.**