# IN THE COURT OF APPEALS OF IOWA

No. 22-1974
Filed December 20, 2023

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**WICHANG GACH CHAWECH,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


      A defendant appeals his convictions for two counts of assault with intent to inflict serious injury, willful injury causing serious injury, and intimidation with a dangerous weapon with intent to injure or provoke fear.  **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**


      Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

      Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


      Considered by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Wichang Chawech appeals his convictions and sentences for two counts of assault with intent to inflict serious injury, aggravated misdemeanors; willful injury causing serious injury, a class "C" felony; and intimidation with a dangerous weapon with intent to injure or provoke fear, a class "C" felony. Chawech raises three claims. He argues the State failed to present sufficient evidence for the convictions, the court erred in failing to merge his convictions for assault with intent to inflict serious injury and willful injury, and the court imposed an illegal mandatory minimum sentence.

## I. Background Facts

A reasonable jury could find these facts from the evidence presented at trial. On October 9, 2021, about one hundred individuals attended a memorial service for a former pastor. Chawech and four other individuals, well-acquainted with Chawech, attended this memorial—Nyamal Deng, Nyalat Deng,[1] Nyador Bilim, and Nyalat Dak. After the service, these five individuals and other service attendees went to a local bar. Also heading to the same bar that day were members of a Quad Cities soccer team, including teammates Maikudi Abdullahi and Redemer Gbeddeh.

On arrival at the bar, there was a confrontation in the back parking lot between the group from the memorial service including Chawech and the soccer team including Abdullahi. The situation was diffused, and both groups eventually entered the bar. On his way into the bar, Chawech and his girlfriend displayed

---

[1] Because Nyamal Deng and Nyalat Deng share the same last name, they will be referred to using both their first and last names going forward.

weapons to Nyalat Deng. Chawech told Nyalat Deng not to worry, that she would be protected. At some point, Chawech recorded a SnapChat video with his girlfriend that showed the pair brandishing firearms.

Once inside the bar, another altercation broke out between Chawech's group and members of the soccer team. That altercation moved back out into the parking lot as it escalated. During the fight, Chawech fired a shot at Abdullahi. Both Abdullahi and Nyamal Deng fell to the ground. Several witnesses stated they heard only a single shot; others reported hearing multiple shots. Chawech left the scene before law enforcement arrived.

Upon arrival, law enforcement found that both Abdullahi and Nyamal Deng had been shot. At the scene, police found a single spent shell casing and a single live round. Both were imprinted with the stamp from a FC 9-millimeter Luger. Abdullahi and Nyamal Deng were taken to the hospital. The bullet fired at Abdullahi grazed Abdullahi's cheek and he eventually recovered but Nyamal Deng passed away nine days after the shooting.

An autopsy determined that Nyamal Deng had been shot in the back of her neck, with the bullet traveling from right to left at an upward trajectory. The bullet wound had an irregular shape, which was consistent with the bullet having struck something prior to hitting her, causing it to "yaw" or tumble. The medical examiner that conducted the autopsy also reviewed photos of Abdullahi's injury. He determined that Abdullahi had been shot from behind at a downward angle, although body positioning at the time of the shooting could mean that an upward angle was also possible.

A few hours after the bar shooting, police responded to a report of shots fired at a nearby park. Chawech was located at the park but not taken into custody. Officers later returned to the same park after receiving a report that a shot had been fired at a vehicle. Officers located two spent shell casings with a stamp from a FC 9-millimeter Luger. Testing revealed the same firearm fired the shells recovered at both the bar and the park, although the firearm was never recovered. Police identified Chawech as a suspect in the bar shooting.

Two days later, Chawech was observed by law enforcement driving a vehicle. When law enforcement began to follow him, he accelerated, crashed the vehicle, and fled on foot. He was not apprehended at that time. Chawech was eventually interviewed by law enforcement, that interview occurring the day after Nyamal Deng's death. Chawech denied shooting a gun on the night in question, and he denied seeing anyone else with a gun. He also denied fleeing from law enforcement. He did not indicate that he fired a weapon at the bar in self-defense.

Chawech was charged with four counts: Count I, first degree murder, a class "A" felony; Count II, attempted murder, a class "B" felony; Count III, willful injury causing serious injury, a class "C" felony; and Count IV, intimidation with a dangerous weapon with intent to injure or provoke fear, a class "C" felony. Chawech raised defenses of reasonable force, justification, self-defense, and defense of others. Chawech testified at trial, and unlike his statements during his interviews with law enforcement, he stated that he fired a gun at the bar in self-defense. The jury found Chawech guilty of the lesser included offenses of assault with intent to inflict serious injury, aggravated misdemeanors, as to Counts I and II. Chawech was found guilty as charged on Counts III and IV as to willful injury

causing serious injury and intimidation with a dangerous weapon with intent to injure or provoke fear. The jury also determined Chawech was in possession of a dangerous weapon pursuant to a special interrogatory submitted without objection from Chawech.

At sentencing as to the two misdemeanor convictions, the court sentenced Chawech to two years in prison and imposed a $855 fine. As to each of the felony convictions, Chawech was sentenced to ten years in prison with a five-year mandatory minimum and a suspended $1370 fine. Three of the convictions were run consecutively to each other but concurrently to one conviction, for the imposition of a twenty-two year prison term. Chawech now appeals.

## II. Sufficiency of the Evidence

Chawech argues that the State presented insufficient evidence to support his convictions. We review sufficiency of the evidence claims for corrections of errors at law. *State v. Crawford*, 972 N.W.2d 510, 516 (Iowa 2022). The jury's verdict must be supported by substantial evidence on the record. *Id.* Substantial evidence could convince a rational trier of fact of guilt beyond a reasonable doubt. *Id.* In determining whether evidence is substantial, we view the evidence in the light most favorable to the State, and "[w]e draw all legitimate inferences in support of the verdict." *Id.* But "[e]vidence which merely raises suspicion, speculation, or conjecture is insufficient." *Id.* (quoting *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992)).

Chawech challenges two aspects of the sufficiency of the evidence. First, he alleges that the evidence supported a finding that he acted in self-defense or the State failed to present sufficient evidence that Chawech was unjustified in

discharging his weapon. And secondly, he alleges that the State failed to present sufficient evidence that the weapon he discharged killed Nyamal Deng.

As to his self-defense claim, Chawech contends that he drew his gun and fired only after Abdullahi drew his own firearm and aimed it at him. He also contends that he observed Abdullahi and others with guns earlier in the night, and that when he fired his weapon, he heard other shots. And as previously highlighted, during his interview with law enforcement, he stated he never shot a gun at the bar and denied seeing anyone with a gun. True, some of the evidence presented at trial supported Chawech's version of events, as there was testimony from witnesses that stated they heard multiple shots and one witness testified that he believed surveillance video of the event showed Abdullahi holding a gun. But there was also evidence presented to the contrary. Several witnesses testified they heard only one shot and that they did not believe the surveillance video showed Abdullahi holding a gun. Police recovered from the scene only a single empty shell, which matched the shells recovered from the park where police found Chawech after the shooting. The medical examiner also determined that Abdullahi was shot from behind, and Abdullahi testified he was unarmed when shot by Chawech. And the jury was able to review the security footage from the night of the shooting.

Although two differing accounts of what happened were presented at trial, there was substantial evidence presented to support the convictions. The jury instructions outlined for the jurors how to handle inconsistent evidence. "[T]he jury instructions become the law of the case for purposes of our review of the record for sufficiency of the evidence." *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

In this case, Jury Instruction No. 5 read, in part: "Try to reconcile any conflicts in the evidence; but if you cannot, accept the evidence you find more believable." Here, the jury weighed the evidence and made that determination. And "we are highly deferential to the jury's verdict," and "[t]he jury's verdict binds this court if the verdict is supported by substantial evidence." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Id.* (quoting *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010)). We conclude substantial evidence was presented for a rational fact finder to find beyond a reasonable doubt that Chawech was not justified in firing his weapon at Abdullahi.

Chawech next argues that sufficient evidence was not presented to show it was the bullet from his gun that struck Nyamal Deng. Chawech asserts that he fired his gun only once, and the medical examiner determined that the bullet that struck Abdullahi was traveling at a downward trajectory while the bullet that struck Nyamal Deng was traveling at an upward trajectory. While the medical examiner testified that a bullet cannot change trajectory, he also stated that it would be possible for the same bullet to have struck both Abdullahi and Nyamal Deng, depending on their body positioning. The medical examiner also determined that the bullet which struck Nyamal Deng was tumbling at the time of impact, indicating it had struck an intermediary object, such as Abdullahi, before striking her. As noted, numerous witnesses heard only one shot, and only one spent shell casing was found on the scene.

We view the evidence in the light most favorable to the State and "[w]e draw all legitimate inferences in support of the verdict," *Crawford*, 972 N.W.2d at 516, and "we are highly deferential to the jury's verdict," *Jones*, 967 N.W.2d at 339. We conclude that sufficient evidence was presented to support the jury's verdict.

### III. Failure to Merge Counts II and III.

Chawech also argues that the court erred in failing to merge his conviction under Count II, assault with intent to inflict serious injury, with his conviction under Count III, willful injury. The State agrees, as do we.

"We review an alleged failure to merge convictions as required by statute for correction of errors at law." *State v. Johnson*, 950 N.W.2d 21, 23 (Iowa 2020). As to the merger of offenses, Iowa Code section 701.9 (2021) states:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Iowa Code § 701.9.

In determining whether convictions should merge, we apply the legal-elements test, under which "we compare the elements of the two offenses to determine whether it is possible to commit the greater offense without also committing the lesser offense." *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). The inclusion of assault with intent as a lesser included offense on the willful injury charge reveals the answer. It was not possible to commit willful injury without also committing assault with intent. Our supreme court has stated that "comparing the marshaling instructions and statutory elements of willful injury and assault with intent, we conclude the offenses should merge," and "[t]here is no

question that as a general proposition, the crime of willful injury cannot be completed without also completing the crime of assault with intent." *State v. Love*, 858 N.W.2d 721, 725 (Iowa 2015).

In this case, there were not multiple acts to justify multiple convictions, *see id.* at 724–25, and the convictions are not independent. *See id.* at 725. We determine the convictions in relation to Counts II and III must merge.

**IV. Mandatory Minimum Sentence and Dangerous Weapon Enhancement**

The question before us as it relates to Chawech's final issue is this: When a special verdict form with the dangerous weapon enhancement is submitted to the jury by agreement of the parties, is the sentence illegal because the State did not charge the enhancement by trial information? The State argues Chawech waived any challenge to the sentence. Chawech argues the sentence is "illegal" so as to obviate the need for objections in the district court. *See State v. Woody,* 613 N.W.2d 215, 217 (Iowa 2000) ("An illegal sentence is void and 'not subject to the usual concepts of waiver, whether from a failure to seek review or other omissions of error preservation.'" (quoting *State v. Ohnmacht*, 342 N.W.2d 838, 843 (Iowa 1983)); *see also* Iowa R. Crim. P. 23(5)(a) ("The court may correct an illegal sentence at any time."). Our review of challenges to the illegality of a sentence is for errors at law. *State v. Carstens,* 594 N.W.2d 436, 437 (Iowa 1999).

Iowa Code section 902.7 mandates that a person guilty of a forcible felony while "in the immediate possession and control of a dangerous weapon" serve a mandatory minimum of five years before becoming eligible for parole. Iowa Code § 902.7. Chawech does not dispute that the dangerous weapon enhancement was submitted to the jury and that the jury found Chawech was in possession of a

dangerous weapon. Neither party disputes that the enhancement in section 902.7 was not formally recited in the trial information, although the State contends the trial information gave Chawech notice of the dangerous weapon enhancement. But Chawech does not claim the court imposed a sentence in excess of that prescribed by law and thus outside the jurisdiction of the court to impose. His claim, a challenge to the adequacy of the trial information, is a procedural error. It is therefore precluded by our normal error-preservation rules. We therefore affirm his conviction and sentence. See *Tindell v. State*, 629 N.W.2d 357, 360 (Iowa 2001).

## V. Conclusion

Finding sufficient evidence was presented to support the convictions, we affirm Chawech's convictions. We affirm the sentence on Count I and Count IV. But because the conviction on Count II, assault with intent to inflict serious injury, and Count III, willful injury, should have merged, we vacate Chawech's sentence on Count II, assault with intent to inflict serious injury, and remand for entry of an order consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Greer, P.J., concurs; Ahlers, J., partially dissents.

**AHLERS, Judge** (concurring in part and dissenting in part).

I agree with and join the well-reasoned majority opinion in all respects except one. The exception has to do with the district court suspending the fines it imposed without placing Chawech on probation. For the reasons explained in my partial dissent in *State v. Laue*, I believe it is impermissible for the district court to suspend any part of a sentence without also placing the defendant on probation. *See* No. 23-0208, 2023 WL 8448475, at *2–3 (Iowa Ct. App. Dec. 6, 2023) (Ahlers, J., concurring in part and dissenting in part). Because the district court did so here, I believe the sentences imposed are illegal, and we must vacate the sentences and remand for resentencing. *See id.* at *3 (noting that the remedy for a sentencing error of this type is to vacate the sentence and remand for resentencing). Therefore, I respectfully dissent from that part of the majority opinion that does not vacate the sentences and remand for resentencing, and I concur in all other respects.