Deborah A. HANSMAN, Individually, and as wife of Rick H. Hansman, and as parent and natural guardian of Jamie C. Hansman, et al., Appellees,

v.

Donald GUTE, Individually, et al., Appellants.

No. 2–56181.

Supreme Court of Iowa.

Feb. 20, 1974.

Rehearing Denied March 18, 1974.

---

Gerry M. Rinden, for Klockau, McCarthy, Lousberg, Ellison & Rinden, Rock Island, Ill., and Marvin F. Heidman, for Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for appellants.

Thomas L. McCullough, Sac City, and David E. Green, Carroll, for appellees.

Heard before MOORE, C. J., and RAWLINGS, REYNOLDSON, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

Dram shop damage action by plaintiffs resulted in judgment on default against defendants from which they appeal. We affirm.

In May of 1972, Deborah A. Hansman, as administrator of her deceased husband's estate, commenced a dram shop action in Sac County. Donald Gute and Louis L. Nagl were among the named defendants.

July 19, 1972, that case was dismissed on an improper party plaintiff based motion by defense attorneys Gerry Rinden and Marvin F. Heidman.

Prior to such dismissal arrangements had been made to take the depositions of Deborah Hansman, Gute and Nagl on July 24, 1972, in the Sac City office of attorney Thomas L. McCullough.

Heidman appeared at McCullough's office July 19, 1972, and the latter then suggested they proceed with the planned depositions despite the aforesaid dismissal because an appropriate similar action would be commenced in Carroll County. Heidman refused to proceed in accord with McCullough's suggestion.

July 25, 1972, the instant Carroll County action was commenced by plaintiffs Deborah A. Hansman, Individually, and as wife of Rick H. Hansman, and as parent and natural guardian of Jamie C. Hansman, Amy Jo Hansman and Nichole L. Hansman, the children of Rick H. Hansman, Deceased, against defendants Donald Gute, Individually; Donald Gute, d/b/a Don's Place, Carroll, Iowa; Louis L. Nagl, d/b/a Louie's Lounge, Carroll, Iowa; and Louis L. Nagl, Individually.

July 26, 1972, original notice as to said Carroll County case was served on defendant Gute.

July 27, 1972, like service was had on defendant Nagl.

August 24, 1972, plaintiffs made application to Carroll District Court for order of default and judgment thereon since none of the above named defendants had appeared as required. On the same day these defendants were adjudged to be in default. Pursuant to court order by Judge Hill, then presiding, a separate hearing was

therafter had and evidence introduced regarding damages.

August 30, 1972, defendants Gute and Nagl moved the aforesaid default be set aside. This motion was premised upon claimed mistake, excusable neglect and unavoidable casualty.

October 16, 1972, hearing was had thereon. Gute, Nagl, Heidman and Rinden testified in support of the motion.

In essence Gute testimonially stated, upon receipt of the Sac County notice he delivered it to his liability insurance representative located nearby in Carroll. Rinden's secretary had, by phone, advised him regarding dismissal of the Sac County case and that he need not appear for the deposition proceeding until otherwise notified. The Carroll County notice was thought by him to be part of the original case. It was his intention to defend against the second action but the related notice received was not delivered to his insurance agent until August 25th, even though he had been told that if served with any litigation papers they were to be turned over to his insurer. He was aware of the fact the last original notice served on him required an appearance within 20 days, and knew the Carroll County case had been instituted because the local paper so stated and tavern patrons had talked to him about it.

Nagl testified substantially to the same effect but additionally stated it would not have made any difference had Rinden's secretary told him a second action would be commenced in Carroll County.

Heidman's testimony discloses he was co-counsel in the Sac County case; no notification was given him regarding the subsequent Carroll County action; but he knew McCullough intended to commence such a proceeding and Rinden had been so advised.

Rinden opined defendants had a meritorious defense due to absence of essential causal relationship between plaintiffs' decedent's intoxication and the death causing motor vehicle accident, and insufficiency of evidence disclosing either defendant had sold plaintiffs' decedent liquor to the point he became intoxicated.

Looking now to the other side of the coin McCullough's testimony discloses that after dismissal of the Sac County case he suggested the planned depositions be taken because a second action would be started against these defendants in Carroll County. Heidman refused the suggestion electing rather, on Rinden's advice, to have the cases proceed in a normal manner. McCullough did not feel called upon to advise opposing counsel regarding commencement of the second action. Upon the filing of plaintiffs' default application Judge Hill was advised as to the prior Sac County case; that appearances had there been made; of the ultimate disposition of that proceeding; and of the statement made to Heidman by McCullough regarding proposed commencement of the Carroll County action.

January 8, 1973, defendants' motion to set aside default was overruled by Judge Hellwege, then presiding.

January 15, 1973, plaintiffs were granted judgment for $138,875 against defendants Gute and Nagl.

A subsequent bill of exceptions by defendants, as supplemented by trial court, was allowed. It is thereby additionally disclosed (1) Judge Hill heard evidence presented on the damage issue but withheld filing of judgment until there had been a ruling on defendants' motion to set aside default; (2) after entry of order overruling said motion no further pleadings were filed; and (3) judgment was thereafter granted without prior official notification to defendants.

In support of a reversal defendants contend the overruling of their motion to set aside the default constituted an abuse of discretion, and they were entitled to be heard regarding the matter of damages following entry of default.

I. Iowa R.Civ.P. 236 states in relevant part:

"On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty."

The purpose of this rule is to allow a determination of litigation on the merits, where appropriate, as opposed to an ex parte adjudication when the absence of opposing litigant is due to his nonprejudicial inadvertence or excusable mistake. See Gordon v. Gordon, 200 N.W.2d 527, 528 (Iowa 1972), and citations.

On the other hand, In re Estate of Staab, 192 N.W.2d 804, 807 (Iowa 1971), holds the burden is upon defendant-movant to plead and prove such good cause as will not only permit but require a finding of mistake, inadvertence, suprise, excusable neglect or unavoidable casualty. And requisite "good cause" is a sound, effective and truthful reason—something more than an excuse, plea, apology, extenuation or some justification for the resulting effect.

Furthermore, in granting or denying a motion to set aside a default the trial court is vested with wide discretion and its findings on disputed facts are entitled to the same weight as a jury verdict. See Garrison v. Garrison, 179 N.W.2d 466, 471 (Iowa 1970).

In other words, this proceeding is at law and we are bound by trial court's findings of fact if supported by substantial evidence. See Walters v. Williams, 203 N.W.2d 383, 385 (Iowa 1973).

Factually analogous to the case not before us is Haynes v. Ruhoff, 261 Iowa 1279, 157 N.W.2d 914 (1968). There a nonresident defendant, after involvement in an Iowa highway accident, first received from the local sheriff an information for defendant's signature relative to a proposed traffic violation charge. Thereafter, by registered mail, return receipt requested, defendant received notice as to a plaintiff initiated civil action against him for damages. Ruhoff neither consulted an attorney nor requested his insurance carrier to act in the matter. In support of a motion to set aside the default defendant testified he and his insurance agent assumed the civil action notice was another attempt to secure his aid in the pursuit of a criminal action against plaintiff. Trial court set aside the default. In reversing we said, 261 Iowa at 1286, 157 N.W.2d at 918:

"It may be that defendant did show grounds for confusion, but we cannot hold that a lack of understanding as to the legal effect of a notice in a civil action will excuse one from taking affirmative action to obtain an understanding and an attempt to appear as required. To permit one to set aside a default when he admits he took no reasonable steps to appear and defend would abrogate completely the rules of civil procedure requiring appearances within a specified time and reward one's neglect or inattention to legal notices properly served upon him.

"We are satisfied defendant failed to show anything more than an excuse, a plea, apology, extenuation, or an explanation for his failure to appear as required by the statute. He failed to show any effort to resolve his confusion or seek legal advice as he did when he received a subpoena previously. In other words, he chose to ignore this notice and decide for himself its import. This is not excusable neglect * * *."

The above holding is equally applicable to each defendant in the case here on appeal.

Moreover, there is no plausible basis upon which to hold defendants in the case at hand clearly intended to defend against the Carroll County action but failed to do so because of a misplaced reliance on another, i. e., their insurance carrier.

▮ Trial court instantly found failure on the part of defendants Gute and Nagl to timely appear in the Carroll County case, after personal service of original notice upon them, was due to inexcusable nonfeasance on their part. See Haynes v. Ruhoff, 261 Iowa at 1284, 157 N.W.2d at 917. Such finding is amply supported by the record.

We find no abuse of discretion by trial court in overruling defendants' motion to set aside the order of default or judgment entered thereon for plaintiffs in this case.

II. By their remaining assignment Gute and Nagl assert, as heretofore noted, that following entry of default they were entitled to be heard on the matter of damages.

This necessitates some reiteration of the factual situation heretofore inceptionally set forth above.

The same day default was entered plaintiffs requested and were granted leave to present evidence in support of their $150,000 damage claim. No notice of such hearing was at any time given defendants.

As thus narrowed it appears the basic question posed is whether defendants were entitled to a postdefault notification regarding time and place of hearing on the damage issue.

In support of their stand Gute and Nagl lean heavily on this statement in Hallett Constr. Co. v. State Highway Comm., 261 Iowa 290, 294–295, 154 N.W.2d 71, 74 (1967):

"Our earlier cases and our present rules place us within the general rule that in an inquiry of damages upon default, all the plaintiff's material allegations are taken as true and the determination of the amount of damages to be awarded is all that remains to be done. In the trial of the question of damages the defaulting defendant has the right to be heard and participate. He may cross-examine witnesses and may offer proof in mitigation of damages. Defendant may in effect even defeat the action by showing that no damages were caused to plaintiff by the matters alleged. 30A Am.Jur.2d, Judgments, section 219; 49 C.J.S. Judgments § 201.

"The rule is stated thus in 25A C.J.S. Damages § 172, page 133; 'On the hearing of an assessment of damages after default, defendant may make no defense to the action, but he has a right to be heard on the matter of damages, and he may contest the amount.' "

▮ Briefly stated, this "right to be heard" pronouncement presupposes an appearance by a defaulting defendant before or at the time damage related evidence is presented. By no means can it be said to dictate the giving of a damage hearing notice to a nonappearing party over whom the court has requisite jurisdiction.

Touching on that subject in Claeys v. Moldenschardt, 260 Iowa 36, 43–44, 148 N.W.2d 479, 484 (1967), we said: "No Iowa rule or decision is cited and none has been found by us requiring notice of hearing be given anyone prior to entry of default judgment where there has been personal service of original notice."

To the same effect is this statement in 25A C.J.S. Damages § 170:

"In the absence of statute or rule of court, a defendant who is in default for lack of appearance generally is not entitled to notice of assessment of damages, or notice of the time when a writ of inquiry as to damages will be executed. The practice rests on the theory that a defendant who has not entered an appearance must himself keep watch and make it his business to appear on the assessment of damages, if he would contest the amount thereof."

See also Stevenson v. Arnold, 250 So.2d 270, 271–272 (Fla. 1971); 3 Freeman on Judgments, § 1291 (5th ed. rev. E. Tuttle 1925); Annot., 15 A.L.R.3d 586, 600–607.

It may, in some cases, be the better practice to notify a defaulting defendant as to time and place of hearing on plaintiff's ad damnum prayer. See Claeys v. Moldenschardt, 260 Iowa at 44, 148 N.W.2d at 484; Iowa R.Civ.P. 115.

We do not elect, however, to now mandate by judicial fiat the giving of a damage hearing notice to every defendant in default for want of any appearance.

■ There is to us no persuasive cause to here hold trial court committed reversible error in taking testimony regarding damages allowable to plaintiffs absent prior notice to these defaulting defendants.

Affirmed.