# IN THE COURT OF APPEALS OF IOWA

No. 18-1904
Filed September 25, 2019

**ERICK SKOGMAN and JENNIFER SKOGMAN,**
    Plaintiffs-Appellants,

**vs.**

**RICK EMERSON and PAULA EMERSON,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Linn County, Mitchell E. Turner, Judge.

Erick and Jennifer Skogman appeal the district court's default judgment order entered in their favor. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Erick J. Skogman of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellants.

Rick Emerson and Paula Emerson, Cedar Rapids, pro se appellees.

Considered by Potterfield, P.J., and May and Greer, JJ.

**POTTERFIELD, Presiding Judge.**

Plaintiffs Erick and Jennifer Skogman appeal the district court's default judgment order entered in their favor against defendants Rick and Paula Emerson. The Skogmans argue the district court erred by (1) dismissing Paula as a defendant for all but the Skogmans' holdover tenant claim; (2) holding the Skogmans were not entitled to damages for some of their construction costs for renovating; and (3) refusing to award punitive damages to the Skogmans.

## I.      Background Facts and Proceedings

This appeal arises out of a real estate transaction between siblings Erick and Jennifer Skogman and Rick Emerson. The Skogmans and Rick entered into a contract under which the Skogmans agreed to sell a home to Rick for $115,000 on or around October 16, 2013. The property was sold "as is." It had been built in the 1920s, had its original electric wiring and plumbing, and would require "significant materials and labor to update." Part of that labor was to be supplied by Rick, who agreed to "replace windows and roof by June 1, 2014" in lieu of a down payment. Monthly payments for the home were set at $1000 plus 1/12 of annual real estate taxes, special assessments, and annual insurance premiums, starting on December 1, 2013. The contract increased the monthly payment to $1200 starting December 1, 2016.

Initially, Rick fulfilled the terms of the contract. He replaced the windows, consistently made the monthly payments, and told the Skogmans he had replaced the roof, as agreed to. But Rick eventually began to fall behind on the payments, and in April 2017, the Skogmans filed a notice of foreclosure. Pursuant to the notice and Iowa Code section 656.4 (2017), Rick had thirty days

to either make the owed payments or forfeit the property, the payments he had made, and any improvements he had made to the property. He did not make the payments or vacate by the deadline. He and his wife, Paula, refused to vacate the property, and, on May 15, the Skogmans filed an affidavit in support of forfeiture. The next day, the Skogmans filed a notice to quit, and under the contract Rick and Paula became holdover tenants as of May 16, 2017.

The Skogmans regained the property on June 13, 2017, and found it would need significant repairs. The back half of the roof had never been completed, despite earlier affirmative statements from Rick that it had. The property was flea-infested, and trash had been strewn throughout the building. The second floor had been completely gutted, and some of the larger fixtures—such as the refrigerator and a vanity—were missing. The electric wiring was exposed throughout the second floor. Part of the kitchen floor had also been removed.

The Skogmans determined they would take a significant financial hit if they sold the property as it was. They determined the entire building would need to be renovated to attract a buyer. In the end, they spent $29,488 renovating the property. It is undisputed that the Skogmans went to significant lengths to minimize the cost of renovating the building. They called in favors with business associates to get services performed cheaply, bargain hunted supplies and materials, and performed or supervised some of the renovations themselves. After completely restoring the second floor and making significant renovations to the rest of the building, they sold the home for $130,000 in December 2017.

The Skogmans initiated this suit on July 13, 2017. The complaint alleged five causes of action. Count I claims Rick and Paula were holdover tenants under Iowa Code section 562.2 between May 16 and June 13, allowing the Skogmans to double the rent for that period pursuant to statute; count II claims Rick and Paula intentionally damaged the home; count III claims Rick fraudulently misrepresented that he had installed the roof; count IV claims Rick and Paula intentionally inflicted emotional distress on the Skogmans by leaving a "used marital aid" for them to find in the house and for threatening statements Rick made to the Skogmans concerning the eviction; and count V claims Rick and Paula abused process by threatening to file criminal charges against the Skogmans.[1]

Rick and Paula were served the petition on July 13 but did not file an answer. On September 6, the Skogmans sent the Emersons a notice of intent to file for default judgment. The Emersons did not respond until their prospective counsel filed an appearance with the district court on September 15, requesting an additional twenty days to address the case and file an answer. The district court granted the request, and the Emersons filed their answer and a motion to dismiss, which was denied.

There were no further developments in the case until June 12, 2018. The Emersons' counsel moved for leave to withdraw, citing a lack of communication with the Emersons. The district court granted the motion, and there is no indication the Emersons retained a different attorney. Neither the Emersons nor any representative of theirs attended the August 24 pre-trial conference. The

---

[1] Count V was subsequently dismissed at the Skogmans' request.

district court held the Emersons in default; cancelled the scheduled jury trial; and, on the Skogman's request, scheduled "an evidentiary hearing to determine damages" for September 26.

At the evidentiary hearing, the Skogmans introduced evidence related to the costs of repairing the property, their efforts to minimize those costs, and the reduction in the property's value caused by the Emersons. The district court issued the default judgment on October 5. The district court first addressed the presence of Paula Emerson in the suit and dismissed her as a party on all but count I of the complaint:

> As previously recited, Paula was not a party to the contract for the purchase of the house, and consequently could not, as a matter of law, be held responsible for any fraudulent misrepresentations as alleged in count III of the petition. Further, no evidence was presented which would lead the court to conclude that Paula Emerson, as opposed to Rick Emerson, was responsible for any possible intentional infliction of emotional distress or intentional damage to the property. She was, however, one of the holdover tenants, and consequently may be held liable for those damages only. The court therefore finds that Paula Emerson should be dismissed as a party defendant as to counts II (intentional damage to property), III (fraudulent misrepresentation), and count IV (intentional infliction of emotional distress).

For count I, the district court found both Paula and Rick were holdover tenants at the property from May 15 until June 13, and awarded the Skogmans $2400 under Iowa Code section 562.2. The district court awarded the Skogmans $15,000 on count II for damages caused by Rick and dismissed the intentional property damage, fraudulent misrepresentation, and intentional infliction of emotional distress claims against Paula.[2] The district court determined no

---

[2] The district court's dismissal resulted from the failure to prove damages against Paula on Counts III and IV. "Though a defendant may default, he is still within

damages were warranted for counts III and IV and declined to award punitive damages. The Skogmans appeal.

## II.     Standard of Review

"We review the trial court's ruling on damages for correction of errors at law." *RC & CA Doghouse, L.L.C. v. Riccadonna*, No. 11-1400, 2012 WL 2407383, at \*8 (Iowa Ct. App. June 27, 2012) (citing *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 388 (Iowa 2010)). "Under this scope of review, the trial court's findings of fact have the force of a special verdict and are binding on us if supported by substantial evidence." *Brokaw*, 788 N.W.2d at 388. "[W]e view the evidence in the light most favorable to the judgment." *Raper v. State*, 688 N.W. 29, 36 (Iowa 2004). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Brokaw*, 788 N.W.2d at 393.

---

the pale of the law and is entitled to just treatment. He has a right to expect and to demand that plaintiff's recovery shall be confined, and responsive, to his pleaded demand." *Hallett Const. Co. v. Iowa State Highway Comm'n*, 154 N.W.2d 71, 73–74 (Iowa 1967); *see also Hansman v. Gute*, 215 N.W.2d 339, 343 (Iowa 1974) ("Defendant may in effect even defeat the action by showing that no damages were caused to plaintiff by the matters alleged." (citations omitted)).

An award of punitive damages is always discretionary. *Id.* at 395. "[W]e review the trial court's refusal to award punitive damages for an abuse of discretion." *Id.* (citing *Wilson v. IBP, Inc.*, 589 N.W.2d 729, 732 (Iowa 1999)).

### III. Discussion

On appeal, the Skogmans allege the district court erred by (1) dismissing Paula as a defendant from all claims except for claim I; (2) finding the Skogmans were not entitled to damages for all of their construction costs; and (3) finding the Emersons did not act with legal malice and refusing to award punitive damages. We consider each of their arguments in turn.

### a. Dismissal of Paula Emerson from all claims except count I

The Skogmans first argue the district court improperly modified the default judgment by removing Paula from all claims except count I. We conclude the district court erred in dismissing Paula from count II but correctly dismissed her from counts III and IV.[3]

While the district court did not specify, it appears the court ordered the evidentiary hearing pursuant to Iowa Rule of Civil Procedure 1.973(2). Where a plaintiff does request a specific amount of damages in their complaint, rule 1.973(2) allows the district court to "hear any evidence or accounting required to warrant the judgment." Iowa R. Civ. P. 1.973(2). After the evidentiary hearing, the district court determined "no evidence was presented which would lead the

---

[3] The Skogmans argue the district court erred by modifying the default judgment pursuant to Iowa Rule of Civil Procedure 1.977. Their argument conflates the default entered by the clerk of court prior to the evidentiary hearing with the default judgment and order they presently appeal. *See* 12 Iowa Prac. Series § 41:41 Default judgments-In general (noting default judgment is a two-step process: entry of default and judgment on default). The district court's entry of default judgment is not a modification under Iowa Rule of Civil Procedure 1.977.

court to conclude that Paula Emerson . . . was responsible for any possible intentional infliction of emotional distress or intentional damage to the property" and dismissed Paula from all claims except count I. But the district court's determination ignores the effect of the entry of default. Once default was entered, all of the Skogmans' material allegations were accepted as true, and all they needed to prove was their damages. *Olver v. Tandem HCM, Inc.*, No. 10-0225, 2010 WL 4885252, at *3 (Iowa Ct. App. Nov. 24, 2010) ("Upon entry of default, 'all the plaintiff's material allegations are taken as true and the determination of the amount of damages to be awarded is all that remains to be done.'" (quoting *Hallett Constr. Co. v. Iowa State Highway Comm'n*, 154 N.W.2d 71, 74 (Iowa 1967))).

With this principle in mind, we consider whether the Skogmans can recover against Paula. For count II, the petition alleges both Rick and Paula caused extensive property damage by allowing the property to fall into disrepair, removing fixtures, and otherwise causing extensive damage to the property. Taken as true, these allegations are sufficient to find Paula liable for the damage done to the property, and the district court erred by dismissing Paula as a defendant from the intentional property damage claim.

For count III, the district court correctly noted the petition does not allege any facts showing either that Paula was a party to the contract or she fraudulently misrepresented the state of the roof to the Skogmans. Additionally, the Skogmans did not provide evidence to that effect at the evidentiary hearing. We conclude the district court did not err by dismissing Paula as a defendant from count III.

Finally, for count IV, the only allegation against Paula is that she and Rick "left a used marital aid on display for petitioners to dispose of." At the evidentiary hearing, the Skogmans did not provide any evidence showing they suffered emotional distress, and they denied either seeking counseling or taking medication in response to Rick and Paula's actions. This allegation, even if accepted as true and coupled with the evidence presented at the hearing, is insufficient to establish a claim of intentional infliction of emotional distress against Paula. *See Smith v. Iowa State Univ.*, 851 N.W.2d 1, 26 (Iowa 2014) ("In order for a plaintiff to successfully bring a claim of intentional infliction of emotional distress, he or she must demonstrate four elements: '(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress.'" (quoting *Barreca v. Nickolas*, 683 N.W.2d 111, 123–24 (Iowa 2004))). We conclude the district court did not err by dismissing Paula as a defendant from count IV.

### b. Construction Costs

The Skogmans next argue the district court erred by declining to award them their requested damages of $29,488 for their construction costs. The district court noted that, while the Skogmans did spend $29,488 working on the property before it was sold, it was unclear how much was spent repairing damages the Emersons had caused:

> This was a 100-year-old house with obsolete knob and tube wiring, antiquated plumbing and HVAC, and a stone foundation. Plaintiffs are entitled to be put back into the same position they would [have] been had the damage not been done. They are not entitled to significantly improve the property at the defendant's expense, charging him for items for which there is categorically no evidence that he damaged in any way. Items such as painting the main area and garage, foundation sealing, stucco repairs, adding gutters to the home, painting the steps, crown molding repairs, replacing the front and back deck, adding a dishwasher, landscaping, staging, lawn mowing and utilities are not recoverable under this record. Other items of damage, such as the rewiring of areas where the wiring was not exposed because of the defendant's removal of the drywall, remodeling the bathroom, and painting some areas are partially recoverable on this record. Quite honestly, it is impossible on this record to determine precisely what was necessary to remedy the damage done by [Emerson] versus what was desirable to put the house in sale-ready condition to someone who is not buying a "fixer-upper."

"As a general rule, the party seeking damages bears the burden of proving them; if the record is uncertain and speculative as to whether a party has sustained damages, the factfinder must deny recovery." *Data Documents, Inc. v. Pottawattamie Cty.*, 604 N.W.2d 611, 616 (Iowa 2000). "[A] fact finder may allow recovery provided there is a reasonable basis in the evidence from which the fact finder can infer or approximate the damages." *Miller v. Rohling*, 720 N.W.2d 562, 572 (Iowa 2006) (quoting *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 641 (Iowa 1996)). A party's testimony as to value is generally sufficient to support an award of damages. *Id.*

It is difficult to discern how much of the $29,488 spent on construction costs was incurred to repair the damage caused by the Emersons. Evidence suggests $7387 of the costs were attributable entirely to repairing damage caused by the Emersons including completing the roof and repairing the kitchen floor the Emersons removed. But for other expenses, the amount spent repairing

damage the Emersons caused is less certain. The Skogmans seek damages for $2500 to paint the entire property; $3750 to rewire the second floor and some areas of the first floor; $2650 to install drywall, at least in part on the second floor; and $3465 to fix the bathroom, although there is no evidence suggesting the Emersons damaged the bathroom in such a way to require extensive repairs, if any work. And there is no evidence the Emersons caused any damage to the foundation, plumbing, or the garage, all of which the Skogmans renovated and now seek compensation for the costs incurred. The district court determined slightly more than half of the Skogmans' construction costs—$15,000 of the requested $29,488—was attributable to repairing damage caused by the Emersons. Without better information in the record, we cannot say that determination is in error.[4]

### c. Punitive Damages

Finally, the Skogmans argue they are entitled to punitive damages, which they requested in conjunction with their claims of fraudulent misrepresentation and intentional infliction of emotional distress. In the default judgment order, the

---

[4] The Skogmans also argue the district court should have awarded them $7200 for the revenue they lost over the six months it took to renovate and sell the property after they regained possession. This issue appears to have only been raised in relation to the Skogmans' holdover tenant claim. The district court noted chapter 656 did not allow the Skogmans to recover rental damages after the Emersons vacated the property and declined to award the Skogmans damages on their holdover tenancy claim for the time between when the Emersons moved out and the property was sold. The Skogmans did not appeal that ruling. Insofar as the Skogmans claim they should receive $7200 in relation to their intentional property damage claim, that argument was not raised or ruled on by the district court, so it is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 538 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

district court declined to award punitive damages, citing a lack of malice on the Emersons' part.

The standard for awarding punitive damages is set by Iowa Code section 668A.1. Under that provision, the plaintiff must show the defendant acted with "willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(a). A showing of willful and wanton disregard requires a showing of actual or legal malice. *McClure v. Wallgreen Co.*, 613 N.W.2d 225, 231 (Iowa 2000). "Actual malice is characterized by such factors as personal spite, hatred, or ill will. Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights." *Id.* (citations omitted).

We begin by again noting the Skogmans' material allegations are accepted as true. *Hallett*, 154 N.W.2d at 74. But the petition does not request punitive damages and does not allege any of the Emersons' actions amounted to willful and wanton disregard for the Skogmans' rights or evince personal hatred or spite for the Skogmans. At most, the petition claims Rick Emerson misrepresented that he had completed the roof when in fact he had not and that he had made some threatening statements to the Skogmans after they threatened to remove him from the property. Accepted as true, these facts do not establish the Emersons' "persistent course of conduct" necessary to show willful and wanton disregard. *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005) (quoting *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 156 (Iowa 1993)). The other evidence on the record does not lead to a contrary conclusion. At the evidentiary hearing, the Skogmans testified Rick had sent them threatening text messages and the Emersons "were actively

damaging property to cause us as much damage as possible." The district court disagreed with this characterization:

> Mr. Emerson bought a 100-year-old "as is" house with the obvious intent to update it and improve it through his own "sweat equity" and then attempt to sell it at a profit. Whether he underestimated the scope of that undertaking and its attendant cost, or other events occurred in his life making the project more difficult, it is clear that he was not successful in his attempt. This is not to say, however, that he did not at least attempt to work on the house. The fact that it was in a state of "disassembly" at the time of the forfeiture is not particularly relevant to the issue of whether he was intentionally attempting to cause the plaintiffs emotional distress. Similarly, the fact that a dead animal (the court assumes it was a rodent of some kind) was found in the house, or that the house was filthy or flea infested is in no way dispositive.

In light of the Skogmans' failure to request punitive damages in their petition, and the record presented at the damages hearing, we cannot say the district court abused its discretion by concluding the Skogmans had not shown the Emersons acted with malice or by and declining to award punitive damages.

## IV. Conclusion

For the above reasons, the district court order entering default judgment on the Skogmans' holdover tenancy, fraudulent misrepresentation, and intentional infliction of emotional distress claims is affirmed. We reverse the district court's dismissal of Paula Emerson as a defendant to the Skogmans' intentional damage to property claim and remand the matter to the district court for entry of judgment against Rick and Paula Emerson. Substantial evidence supports the district court's award of compensatory damages in the amount awarded, and the district court did not abuse its discretion by declining to award punitive damages.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**